Dissent of

Judge Mills.

I conceive that it is not clear, that the act of the legislature establishing towns, did intend to strip claimants of their title, who do not assent to such establishment. It is also not clear, if it did, that the lessors of the plaintiffs in this instance, should not be permitted *329 to sustain their suit for the purpose of establishing their title to the land at law, and of giving them the benefit of the bond of the proprietor and his sureties. But waiving tL ,.,e points, I cannot concur in so much of the opinion rendered by a majority of the court, as decides that the legislature can divest any person of his estate, for the. purpose of establishing a town, without his consent.
The supreme court of the United States, whose authority in construing the constitution of the United States, this court has expressly admitted to be conclusive, in .the case, 'of the Bank of the United States vs. Norton, 3 Marshall 422, has expressly decided that a grant from a state is a cpntract, within the meaning of the constitution of the United States, which provides that the stale legislatures shall pass no laws “ impairing the obligation of contracts.” .This decision is in the case of Fletcher vs. Peck, 6 Cranch 87. ‘it was there decided, that the state of Georgia could not revoke its grants for lands, although a. former legislature might have granted them away fraudulently. This .case, it is true, involves but a small proportion of one grant; that involved many grants of a large territory. But the principle which includes many grants of a.large tract, will equalty include' one grant and a small boundary. In that casé the legislature of Georgia attempted to take back the land and transfer it to the United States; in this case, through the instrumentality of the county court, the attempt is to take back what had been granted by Virginia, and give or sell it to sundry individuals, in order that they may build a town thereon; and this is the only difference in the cases, and the inquiry must be, whether this makes -any difference in the law of the case 1
It seems clear that the infraction of the contract does not depend upon the purposes to which the subject of the contract is applied, after it is taken ■ from the person to whom it was first granted. It is immaterial to the first grantee, to whom the terms of the patent give it forever, to what use government may apply it after it is taken from him. Whether it goes to private or public use, the consequences to him are precisely the same. The inquiry is, what is the contract first made with him, and does taking away the thing granted, impair that'eontract, and not what new contract government means to make with others. 'If government can again *330 take (be land and apply it to public use, that is, to the use °f government itself, it is competent for the government to re-grant it again to another individual. Hence it will follow, by extending the principle, that the government may take land from one individual and give.it to another, and all the estates of the country, at the will of a majority of the legislature, may pass into other hands.
It is contended (hat it would be singular, if a whole state could not procure the farm of an individual, whereon to fix the capítol, without his consent, and a county could not fix its site of justice where it pleases. If such a case could happen, it would be but seldom, and a pride sufficient to tempt the stubborn individual, would carry with it his consent and remove the objection. The right of alienation with consent, and security against alienation without consent, either express or implied, from the grahtee, must enter into the nature and essence of every grant from government, expressed as the Virginia grants are, and whenever this is taken the contract or is
' But it is said that towns are necessary for public purposes.’ This is not admitted. But suppose it be allowed that they must of necessity exist, still they will of themselves without legislative aid, and will be found at every plaqe, as commerce is, where incentives exist to their establishment. It will be found in the history of many of the states, that towns are not established by any legislative act. They are permitted to rise increase as the farms, without any legislative inducement, or any attempt to convert the lands of any individual to that purpose, and yet towns exist there wherever they are ,necessary. ‘It is true, this state first sumed the power - of establishing towns before they could exist, by the legislature^ and next delegated power to the-county courts, until our minds are led into the belief that towns are essentials, which cannot had without legislating away the lands of citizens against their consent, and, moreover, we may be extending to the inhabitants thereof, a kind of exclusive privilege, by enabling them to hold their lands in town free from the claims of all the world, while no such exemption is extended to the country .farmer. .Why should this difference be made, and lands in town be held by a tenure different from those in the country? Or *331 rather, why cannot the principle be extended to the farms also? And cannot the legislature,-by directing notice to be given, and then an order of court to be made, vest the title of allinterferingclaims in trustees, and then dispose of ground as well with regard to all the patents as to one? No reason is perceived why the principle does not embrace valuable farms, as well as this obscure village on the bank of Licking, where exists no seat of justice, and only perhaps one or moré ware-houses. In shprt, it is not conceded that the appropriating land to a town, is applying it to public use; but the land is again actually sold to individuals, and used for their own emolument, except that part of it reserved for streets, which bear the same relation to the town that roads do to the country, of which notice will be taken hereafter. But if this assumption is mis--taken, and an appropriation for a town is a public- appropriation, the result is the same; for there is no- greater power to revoke the grant for one purpose than the other.
Nor can the circunstance that bona and surety is given, make any material difference. The land is a certain fund granted forever, and cannot fail; bond and personal security, are precarious m their nature, and liable to insolvency, death and'removal; and the acb attempts to cause the true owner- to take this in lieu of his land, and this without consulting him. It may be argued that the assent of the real owner ought to be-presumed, and that with his assent, it was Competent for the legislature to pass his title, It will be readily granted, that the legislature can-pass the title of any person with his assent, by direct legislation, or through, the instrumentality of a court; but it is not conceded that any consent ought to be presumed, It would be a large stretch of presumption, to say that the patentee in this case, who resided in Virginia, must be held to have notice'of the establishment of the town of-Marys-ville, from the publication required by the- act, when, if he saw the notice, which is not the least p'robable, he could not possibly know therefrom, that it -was., intended to locate the town on his land; but on tboseoi-Be-n-. jamin Harrison, which he could- not know, except from, some other casual source, to interfere with his.
The argument arising from the power of the states to establish public roads, is strongly relied on to sust'aip *332 this power. It is not admitted that the cases are anril* °gous> or that they rest on the same principle. In the case of roads, the right of property is not taken away, but the use of it at the will of the owner, for the convenience of the public, is curtailed, and if any valuable mineral exists, it still belongs to the owner. It is, however, conceded that this difference between the two cases, is not decisive of the controversy; for it may still be contended, that in as much as the right of the owner to use the thing ad libitum, is curtailed by the road, the contract or grant of .the owner is impaired, and, therefore, the exercise of such a power, is unconstitutional. To- this reasoning another answer will, therefore, be given. No government ever gave a grant to an individual, with a design that he should circumscribe himself within it like the snail, and repel all others, and become, as it were the surly despot over his own unmolested region. It is always understood at the time, that he was a social being; that he shall unite and connect himself with the society around him, by the usual ties of intercourse, necessary for the existence itself of civil society. It would, therefore, of course be necessary that others should pass to and from him, or g® over and beyond his domain, to carry on tbe ordinary business of life. To these things it was understood he must submit. The laws of every previous govern-. ment required such passage; tbe laws of Virginia did so, both before, at, a.nd after the emanation.of the grant, which was not the case at that day, with regard to the existence of towns thereon. Civil society, in short, could not exist at all, if such passage by road could be restrained by every owner of the soil. The right of way, therefore, so far as is.necessary and proper to facilitate the accustomed intercourse of life, maybe said to be, and in fact is, and was the tacit condition annexed to every grant, and compelling any grantee to submit to it, does not impair -his grant. He is. bound to submit to the ancient and well known maxim, “ siculcre tuo ut nonalienum ladas” It is on this principle that we abate a private nuisance erected on the property of our neighbor, if it annoys us, however convenient its existence may be to him. His right to use his soil in that way, is curtailed 'by the abatement, and to it he must submit, because it is contrary to the fundamental laws of society to erect it at first; but still it is not *333 more so, than The obstruction of way, which would absolutely destroy tbe use of real estate altogether, unless we could suppose that every one could remain within his own, grant, like Selkirk on his lonely isle, and yet at the same time enjoy the blessings and benefits of civil society. It is, therefore, conceived, that the case of roads has no analogy to the present case, and that the right to-establish them, will not be impaired by this doctrine.
It is not perceived how any possible meaning placed on the words “ impairing the obligation of a contract,” can make this act of the legislature escape the constitutional barrier. If, as some contend, the “ obligation of a contract” means the remedy to enforce it, then all real and mixed actions, and even this ejectment, with its consequent writ oí habere facias possessionem, are evidently the remedy given to enforce and support the contract and sustain its value. The destruction of it,' must, therefore, impair the obligation. If, on the contrary, the “ obligation of a contract,” means the terms of that contract, running 'parallel with, agreeable to, and sanctioned by the law of the land, without regard to remedy, further than remedy shall be made yse of as a means to sustain its value on the one hand, or lessen and impair it on the other, then the obligation is more than lessened and impaired. It is entirely taken away, leaving the owner to take in lieu of it, the doubtful risk of recovering something on an ancient bond with security, if he chooses, or nothing at. all. If, however, neither of these meanings of the constitution should embrace it, and we cannot bring the act in question within the words “ obligation of a contract,” then our own constitution expressly forbids any law “ impairing contracts,” leaving out the word “ obligation,” and surely the contract here, is not only impaired as to the true ' owner, but is taken from him and sold to others, who now with his own title attempt to defeat him.
In every way, therefore, in which the question can be viewed, it is conceived the act of the legislature, con-. strued as now contended for, must violate either or'both of the constitutions of the United States and of this state, by transferring the title of the patentee to others, without his consent, and the court below decided correctly in refusing to give it such extensive operation.